IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ESTATE OF STEVEN EVERETT SHAW, *et al.*, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:08-CV-1737-N |
| NICHOLAS SIERRA, *et al.*, | § § § | |
| Defendants. | § | |

## ORDER

This Order addresses Defendants Nicholas Sierra ("Sierra") and Todd Cavaliere's ("Cavaliere") motion for summary judgment [28]. Because the Court finds that Defendants' qualified immunity bars Plaintiffs' claim, the Court grants Defendants' motion.[1]

### I. ORIGINS OF THE PLAINTIFFS' CLAIM

This action arises out of a high speed vehicle chase in the early morning of October 14, 2007, culminating in the use of deadly force by Sierra and Cavaliere, officers of the Mesquite Police Department, against the decedent, Steven Everett Shaw ("Shaw"). Plaintiffs allege that Defendants used excessive force in violation of Shaw's Fourth Amendment rights. Defendants move for summary judgment on the ground that Defendants' qualified immunity

---

[1]The Court denies as moot Sierra's Motion for Rule 7a Reply to Qualified Immunity Defense [7], Sierra's Motion for Protective Order to Stay Discovery [9], Cavaliere's Motion for Rule 7a Reply to Qualified Immunity Defense [14] and Cavaliere's Motion for Protective Order [19].

ORDER – PAGE 1

bars Plaintiffs' claim. Plaintiffs respond that a genuine issue of material fact exists with respect to the objective reasonableness of Defendants' use of force.

Many of the facts in this case are undisputed. Cavaliere attempted to conduct a traffic stop after observing what he perceived to be suspicious activity by Shaw. When he approached to conduct the stop, Shaw fled. The resulting chase extended through three cities. Ultimately, Shaw turned down a dead-end street and drove around a locked barricade into a pasture area, where his vehicle became lodged on a utility pole guy wire. At this point, Sierra and Cavaliere exited their vehicles and approached Shaw's vehicle on foot. Shaw reversed in order to disentangle his vehicle from the guy wire and proceeded forward, toward Cavaliere. As the car began to move forward, both Sierra and Cavaliere fired at Shaw. Shaw died as a result of the gunfire.

The central issue in this case is whether the force used by Defendants was objectively reasonable in the circumstances they confronted. Sierra and Cavaliere assert that they believed Cavaliere was in imminent threat of death or serious injury by being run over by Shaw at the time they fired. Defs.' App. to Br. in Supp. of Mot. for Summ. J. [30-1] at 3; [30-2] at 3. The parties provided competing expert testimony regarding the reasonableness of this belief. Further, both parties offered as evidence four video clips, taken from the video cameras of patrol cars on the scene. Defs.' App. to Br. in Supp. of Mot. for Summ. J., Ex. 3; Pls.' App. to Br. in Resp. to Defs.' Mot. for Summ. J., Ex. 3-6. Both parties rely heavily on this video evidence to support their claims.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is a genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute over a material fact is genuine if, based on the evidence, a reasonable jury could return a verdict for either party. *Id.* at 252. In ruling on a motion for summary judgment, the Court must accept the nonmoving party's evidence and draw all justifiable inferences in its favor. *Id.* at 255.

A party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. The moving party may meet this burden by either (1) presenting evidence that affirmatively demonstrates the absence of any genuine issue of material fact, or (2) after adequate time for discovery, demonstrating that "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets this burden, the nonmoving party cannot defeat summary judgment by resting upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue of fact. *Id.* at 324.

### III. THE DEFENDANTS' QUALIFIED IMMUNITY BARS THE PLAINTIFFS' CLAIM

#### A. The Qualified Immunity Standard

"Qualified immunity protects government officials performing discretionary functions from civil damages liability *if* their actions were *objectively reasonable* in light of then clearly established law." *Bazan v. Hidalgo Co.*, 246 F.3d 481, 488 (5th Cir. 2001) (emphasis in original); *see Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009). "Because qualified immunity is 'an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'" *Pearson*, 129 S. Ct. at 815 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). As a result, the Supreme Court has instructed lower courts to resolve questions regarding the defendant's entitlement to the defense at the earliest possible stage of litigation. *Id.* at 815 (citing *Hunter v. Bryant*, 502 U.S. 224 (1991)). To this end, the Fifth Circuit requires the plaintiff to meet a "heightened pleading" standard in order to avoid dismissal in cases where a government official invokes qualified immunity. *See Schultea v. Wood*, 47 F.3d 1427, 1432–33 (5th Cir. 1995) (en banc). Accordingly, once a government official raises qualified immunity as a defense, the plaintiff bears the burden of pleading specific facts demonstrating that the defendant cannot sustain the defense. *Id.* at 1433.

In assessing a defendant's assertion of qualified immunity, reviewing courts typically engage in a two-pronged analysis established in *Saucier v. Katz*, 531 U.S. 991 (2001), *overruled in part by Pearson*, 129 S. Ct. at 818. Under the first prong, a court determines whether the facts alleged, viewed in the light most favorable to the plaintiff, are sufficient

to show that the defendant violated the plaintiff's constitutional rights. *Id.* at 201–202. If a court finds a violation of a constitutional right, it proceeds to the second step of the *Saucier* analysis. Under this prong, a court considers whether the constitutional right was clearly established, such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.

The Supreme Court recently held that although the two-prong analysis established in *Saucier* is often appropriate, it is not mandatory for the consideration of qualified immunity claims. *Pearson*, 129 S. Ct. at 818. Lower courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Id*. at 818. In this case, the Court finds it appropriate to follow the traditional *Saucier* procedure.

### *B. Defendants Did Not Violate Shaw's Fourth Amendment Right Against Unreasonable Seizure*

Plaintiffs contend that Sierra and Cavaliere used excessive force in violation of Shaw's Fourth Amendment right against unreasonable seizure. To prevail on an excessive force claim, Plaintiffs must establish: "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Collier v. Montgomery*, 569 F.3d 214, 219 (5th Cir. 2009) (citing *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005)). Therefore, if an officer's use of force was

reasonable under the circumstances, an essential element of the Plaintiffs' claim is defeated and Defendants are entitled to summary judgment.[2]

Once the Court determines the facts in the light most favorable to the nonmoving party, to the extent supportable by the record, "the reasonableness of [an officer's] actions . . . is a pure question of law." *Scott v Harris*, 550 U.S. 372, 380 n.6 (2007). Reasonableness is determined by balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (citing *United States v. Place*, 462 U.S. 696, 703 (1983)). This balancing "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989); *see Lytle v. Bexar County*, 560 F.3d 404, 410 (5th Cir. 2009). When an officer has probable cause to believe that the suspect poses an imminent threat of serious physical harm to the officer or others, deadly force is reasonable. *Garner*, 471 U.S. at 11.

Even when viewed in the light most favorable to the plaintiff, the facts of this case do

---

[2]Claims of excessive force under the Fourth Amendment complicate the *Saucier* inquiry, as the Court must make two "overlapping objective reasonableness inquir[ies]." *Saucier*, 533 U.S. at 210 (Ginsburg, J., concurring in the judgment); *see Lytle*, 560 F.3d 404, 410 (2009). First, the Court must consider the constitutional violation, utilizing the Fourth Amendment's reasonableness test. If the officer's conduct was not objectively reasonable under the Fourth Amendment, the Court must answer the second prong of the *Saucier* analysis, determining whether the law was clear enough for a reasonable officer to know that his conduct violated the Constitution. While these inquiries are similar in nature, they are distinct questions. *Lytle*, 560 F.3d at 410.

not establish a constitutional violation by Sierra and Cavaliere. An officer's decision to use force must be judged at the time of the incident, not "with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396; *see Hathaway v. Bazany*, 507 F.3d 312, 321 (5th Cir. 2007). Reasonableness in the context of deadly force "must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97. In this case, the officers fired as Shaw's vehicle approached Cavaliere, who was on foot. At the time of the incident, the officers reasonably believed that Shaw might run over Cavaliere. They fired at Shaw to halt this threat. In these circumstances, Defendants' use of force was reasonable.

Plaintiffs argue that many courts have "found police officers shooting of fleeing motorists to be unreasonable – or at least potentially so, for the purposes of qualified immunity appeals." Pls.' Br. in Resp. to Defs.' Mot. for Summ. J. [35] at 15–16 (citing *Adams v. Speers*, 473 F.3d 989, 991 (9th Cir. 2007); *Smith v. Cupp*, 430 F.3d 766, 770 (6th Cir. 2005); *Vaughan v. Cox*, 343 F.3d 1323, 1326–27 (11th Cir. 2003)).[3] Plaintiffs also rely on *Lytle v. Bexar County*, a recent case decided by the Fifth Circuit, to support their claim. 560 F.3d 404 (5th Cir. 2009). These cases address an officer's use of force against a fleeing suspect in the course of flight. However, these cases do not apply in the case at hand. This

---

[3]Plaintiffs do not cite *Scott v. Harris*, 550 U.S. 372 (2007) or *Pasco v. Knoblauch*, 566 F.3d 572 (2009), in which the Supreme Court and the Fifth Circuit recently upheld the use of potentially deadly force (ramming a fleeing suspect's vehicle off of the road) to halt a high-speed car chase that threatens the lives of innocent bystanders.

ORDER – PAGE 7

case is not about the danger a fleeing suspect posed to the pursuing officers or the community at large in the course of flight, but rather about the imminent threat of severe physical harm a suspect posed as his vehicle approached an officer standing directly in front of it.[4]

The evidence submitted by both parties shows a dangerous and prolonged vehicle chase in which the decedent drove through the front yard of at least one residence, down the wrong side of the street and toward an officer's vehicle in an aggressive manner. Defs.' App., Ex. 3; Pls.' App., Ex. 3-6. As in *Scott*, the decedent posed "an actual and imminent threat to the lives of any pedestrians who might have been present, to other civilian motorists, and to the officers involved in the chase." *Scott*, 550 U.S. at 384. However, Defendants did not fire at Shaw or ram his car at any time during the course of the chase. It was not until the end of the chase, when Shaw's vehicle accelerated toward Cavaliere, who was approaching the vehicle on foot, that the officers used force. Defs.' App., Ex. 3; Pls.' App., Ex. 3-6.

Both parties rely heavily on the video evidence they submitted to establish their claims. Plaintiffs allege that "the fact that neither of the shooting officers can be seen in any of the videotapes at the time of the shooting is at least some evidence that they were not close enough to Decedent Shaw's vehicle to be in imminent danger." Pls.' Br. in Supp. of Resp. to Defs.' Mot. for Summ. J. [35] at 10. This portrayal of the video evidence is not entirely accurate. Due to the angles of the cameras, it is not possible to see both Cavaliere and Shaw's vehicle in the same video. Defs.' App., Ex. 3; Pls.' App., Ex. 3-6. Viewed

---

[4]Plaintiffs assert that Shaw was attempting to flee Defendants at the time they fired. However, Shaw's subjective intent is irrelevant to the extent that the officers reasonably believed that he posed an imminent threat of serious bodily harm to Cavaliere.

contemporaneously, however, the videos clearly depict Cavaliere at a reasonably close distance to the front of Shaw's vehicle as Shaw proceeded forward. *Id.* Thus, the videos demonstrate that a reasonable officer in Sierra or Cavaliere's position could have believed that Cavaliere was in imminent threat of serious physical injury by being run over by Shaw.

Finally, Plaintiffs offer the expert testimony of Rodney Jeanis, a former sheriff in Hood County, Texas. Jeanis concluded that Defendants were not in threat of imminent serious physical harm and that the force used was excessive. Pls.' Br. in Resp. to Defs.' MSJ [35] at 5-6. Plaintiffs' expert provides no methodology or foundation for these conclusions. Where an expert's affidavit does not provide the reasoning process underlying the expert's opinion, a court need not consider it on summary judgment. *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 357 (5th Cir. 2001) (citing *Boyd v. State Farm Ins. Cos.*, 158 F.3d 326, 331 (5th Cir. 1998)). Therefore, this evidence is insufficient to create a genuine issue of material fact.

### *C. Defendants' Use of Force was Reasonable Under the Second Prong of the Saucier Test*

Because Plaintiffs cannot establish a constitutional violation, the Court need not proceed to the second prong of the qualified immunity analysis. *See Hathaway v. Bazany*, 507 F.3d 312, 320 (5th Cir. 2007). However, the Court notes that even if it were to presume that Defendants' use of force was excessive and proceed to *Saucier's* second prong, Defendants would still be entitled to summary judgment because their conduct was objectively reasonable in light of clearly established law. "Even if an official's conduct

violates a constitutional right, he is entitled to qualified immunity if the conduct was objectively reasonable." *McClendon v. City of Columbia*, 258 F.3d 432, 438 (5th Cir. 2001).

Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Pasco v. Knoblauch*, 566 F.3d 572, 581–82 (5th Cir. 2009) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). This reflects the understanding that "reasonable mistakes can be made as to the legal constraints on particular police conduct." *Saucier*, 533 U.S. at 205. The doctrine shields officers' decisions made in the context of fast-paced, tense and difficult circumstances. It serves to "protect officers from the sometimes hazy border between excessive and acceptable force, and to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Id*. at 205–06 (internal quotation marks and citation omitted). Defendants' use of deadly force to terminate what they reasonably believed to be an imminent threat of serious physical harm to Cavaliere did not violate clearly established law and was reasonable under the circumstances. Accordingly, qualified immunity protects Defendants from suit.

### IV. CONCLUSION

For the reasons stated above, this Court grants Defendants' motion for summary judgment.

Signed September 1, 2009.

_____
David C. Godbey
United States District Judge